IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | |
| Plaintiff, | |
| v. | CIVIL ACTION NO.  CV 425-152 |
| ACTION INSULATION CO., | JURY TRIAL DEMAND |
| Defendant. | |

# COMPLAINT

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of sex and to provide appropriate relief to Jessica Snyder ("Snyder"). The Equal Employment Opportunity Commission (the "Commission" or "EEOC") alleges that Defendant Action Insulation Co. subjected Snyder to a sexually hostile work environment, resulting in the constructive discharge of her employment.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42

U.S.C.§ 2000e-5(f)(1) and (3) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of Georgia, Savannah Division.

## PARTIES

3. Plaintiff, the EEOC, is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant has continuously been doing business in the State of Georgia and the City of Port Wentworth and has continuously had at least 15 employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## ADMINISTRATIVE PROCEDURES

6. More than thirty days prior to the institution of this lawsuit, Snyder filed a charge with the Commission alleging violations of Title VII by Defendant.

7. On February 24, 2025, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that Title VII was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

8. On April 17, 2025, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

9. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

10. Defendant is a general contractor located in Port Wentworth, Georgia that specializes in insulation installation and asbestos abatement, servicing customers in the Savannah and Chatham County area.

11. Snyder began working for Defendant on or around April 11, 2016, as an Office Manager.

12. The office manager position job duties included performing secretarial tasks such as invoicing and filing and functioning as the office manager.

13. As office manager, Snyder reported to Defendant's owner, who founded the company.

14. At all times relevant to this action, Defendant's owner has served as its chief executive officer, chief financial officer, corporate secretary, and registered agent.

15. At all times relevant to this action, Defendant's owner held such a high position in the company that he could be considered its alter ego.

16. While working as an office manager, Snyder interacted with Defendant's owner frequently.

17. Snyder did not receive any negative performance reviews or disciplinary actions during the eight years she worked for Defendant.

18. During her employment with Defendant, Defendant's owner subjected Snyder to sexual harassment in the form of unwanted jokes, statements, photos, and inappropriate touching.

19. Throughout her employment and on a consistent basis, at times that Snyder appeared tired, Defendant's owner would subject her to unwanted comments such as, "You wouldn't be tired if you had not stayed up having that wild funky sex."

20. On a consistent basis, at least once a month, from in or around 2016 through Snyder's separation from employment in 2024, Defendant's owner would say he was going to bend Snyder over his knee.

21. From in or around 2016 through 2021, Defendant's owner made untrue comments about Snyder having sex with her roommates and friends.

22. In or around 2018, on at least two occasions, Defendant's owner showed Snyder photos of naked women from Craigslist and other similar sites on his computer.

23. Defendant's owner asked Snyder if she took "pictures like that."

24. In response, Snyder told Defendant's owner that the pictures were gross.

25. On several occasions in or around 2018 and 2019, Defendant's owner said he was "single for the weekend," and asked Snyder to come to his home.

26. Snyder rebuffed and ignored Defendant's owner's advances.

27. In or around the spring of 2019, Defendant's owner made a comment about Snyder's breasts not fitting in a shirt; Snyder walked away in response.

28. Beginning in or around 2020 and continuing through the end of her employment with Defendant in 2024, Defendant's owner placed his hand on the

small of Snyder's back at least once a month. Snyder consistently moved away from his touch.

29. Beginning in or around 2022 and continuing into 2023, Defendant's owner would threaten to smack Snyder's buttocks, telling her that she would like it.

30. In or around 2023, Defendant's owner made a comment about putting his hand on Snyder's leg while he drove.

31. Snyder reported the comment Defendant's owner made about putting his hand on her leg to a company supervisor, who took no action.

32. In or around October 2023, after Snyder had a mammogram performed by her doctor, Defendant's owner stated that he could have done the mammogram for Snyder.

33. In or around January 2024, Defendant's owner grabbed, held, and interlaced his fingers into Snyder's hand as if the pair were a couple.

34. Snyder pulled away when Defendant's owner grabbed her hand.

35. In or around February 2024, Defendant's owner grabbed Snyder, pulled her close to his body, hugged her, and stated that he missed her and asked if she missed him.

36. In response, Snyder backed up and pushed Defendant's owner away.

37. In or around March 2024, Defendant's owner made untrue statements to coworkers that Snyder and one of the office supervisors were having a sexual relationship.

38. Defendant's owner's sexual talk about Snyder and the office supervisor was so pervasive that others in the workplace began to believe it was true.

39. On or around March 26, 2024, Defendant's owner came up behind Snyder and slapped her buttocks.

40. Snyder was so distraught about Defendant's owner slapping her buttocks that she immediately sent a text message to her friends about the owner slapping her buttocks, and she also reported the slap in a text message to the same office supervisor to whom she had previously complained.

41. Snyder returned to work on or about March 27, 2024, because it was a day on which her job duties required her to process Defendant's payroll.

42. On or about March 27, 2024, Defendant's owner grabbed Snyder's ponytail from behind while she sat in her chair.

43. In response, Snyder asked Defendant's owner, "Are you serious?"

44. Snyder returned to the office on March 28, 2024 and March 29, 2024, but she left early as a result of emotional distress relating to the sexual harassment.

45. On or about Friday, March 29, 2024, Snyder requested an appointment with her doctor due to work-induced anxiety because she felt that she could no longer handle the demands of her job and the hostile work environment that Defendant's owner created by sexually harassing her.

46. Snyder was diagnosed with anxiety in or around December 2021, while employed by Defendant.

47. Snyder did not have anxiety before being subjected to Defendant's owner's harassment.

48. Defendant's owner's harassment prompted Snyder to seek medical attention from a doctor.

49. Snyder's doctor increased Snyder's anxiety medication dosage due to the anxiety caused by Defendant's hostile work environment.

50. Snyder sent Defendant's owner a text message on March 29, 2024, explaining she would be away from work on Monday, April 1, 2024, for a doctor's appointment.

51. On or around the morning of Monday, April 1, 2024, at or around 7:37 a.m., Snyder emailed Defendant's owner the following,

> For years you have made me uncomfortable with regularly acting inappropriately in a workplace – from requiring me to look at naked ladies on Craigslist (on company equipment) (which thankfully you stopped doing when I expressed my disgust), to your comments about

me having sex, or saying you were going to bend me over your knee. I believe I made it clear from my reaction to those comments and requirements that your actions were not welcome – but as a single mother who otherwise likes and needs this job, I tolerated it. I even had to go on medication because of the stress it caused me – but I stayed. However, you have now graduated to touching me – in January grabbing my hand for a long time. In February hugging me, and earlier this week, slapping my butt. It is not acceptable behavior and I have spent much time crying and worrying about being fired if I complain to you. But I can no longer tolerate this behavior. The manual says I should advise you that your behavior is unwelcome and ask you to discontinue it. So please stop discussing sex in any way, and please do not touch me.

52. At or around 9:45 a.m. on or around Monday, April 1, 2024, Snyder went to visit her doctor.

53. After her appointment, at or around 12:21 p.m., Monday, April 1, 2024, Snyder sent Defendant's owner a text message stating, in relevant part, "After the events of the last week and the on going [sic] toxic work environment your behavior has created I am writing this to inform you that this morning was my last day of work and I will not be returning to Action Insulation."

54. Any report of Defendant's owner's harassment made by Snyder to any employee of Defendant would have been futile because of Defendant's owner's position within the company.

## STATEMENT OF CLAIMS

### *Hostile Work Environment*

55. Since at least in or around April 2016, Defendant has engaged in unlawful employment practices in violation of Title VII.

56. Snyder was subjected to unwelcome sexual harassment amounting to a hostile work environment based on her sex when Defendant's owner took the actions outlined in this Complaint.

57. The harassment was unwelcome.

58. The harassment was sufficiently severe or pervasive to alter the terms and conditions of Snyder's employment.

59. The frequency and severity of Defendant's owner's harassment interfered with Snyder's ability to work.

60. There is a basis for holding Defendant liable for its owner's harassment.

61. Defendant's owner holds a sufficiently high position in Defendant's management hierarchy such that his actions may be imputed automatically to Defendant.

62. Snyder did not have anyone above Defendant's owner to whom she could report sexual harassment.

63. The *Faragher/Ellerth* defense is not available to Defendant because its owner was acting as a proxy or alter ego of Defendant when he harassed Snyder.

64. The unlawful employment practices complained of above have deprived Snyder of equal employment opportunities.

65. The unlawful employment practices complained of above were intentional.

66. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Snyder.

### *Constructive Discharge*

67. Defendant deliberately made Snyder's working conditions intolerable, thereby forcing Snyder to resign.

68. Snyder's environment and conditions of employment were so unbearable that a reasonable person in that person position would have been compelled to resign.

69. Snyder reasonably believed that Defendant's owner would terminate her employment or otherwise retaliate against her for opposing his harassment.

70. Due to Defendant's owner's harassment, its effects on her health, and the futility of any complaints about his conduct, Snyder could not bring herself to return to work.

71. Because of the harasser's position as owner of Defendant, Snyder had no recourse and was put in a position where she had no choice but to resign.

72. Snyder was thus constructively discharged from her employment with Defendant.

73. The effect of the practices complained of in paragraphs 1 through 72 above has been to deprive Snyder of equal employment opportunities and otherwise adversely affect her status as an employee because of her sex, in violation of Title VII.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from maintaining a sexually hostile work environment and engaging in employment practices which discriminate against employees based on their sex.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for women, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make whole Snyder by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other

affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D. Order Defendant to make whole Snyder by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

E. Order Defendant to make whole Snyder by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices described above, including inconvenience, emotional pain and suffering, anxiety, stress, depression, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F. Order Defendant to pay Snyder punitive damages for its malicious and reckless conduct, as described above, in an amount to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted,

ANDREW ROGERS
Acting General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

MARCUS G. KEEGAN
Regional Attorney

ROBYN FLEGAL
Acting Assistant Regional Attorney

*/s/ Fahad A. Khan*
Fahad A. Khan
Trial Attorney
Georgia Bar No. 442892

Equal Employment Opportunity Commission
Atlanta District Office
100 Alabama St. SW, Suite 4R30
Atlanta, Georgia 30303
fahad.khan@eeoc.gov
Telephone: (470) 531-4811
Facsimile: (404) 562-6909